# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# 3:07CV396-H

| | |
|---|---|
| STACY C. HARRELL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | )     **MEMORANDUM AND ORDER** |
| CITY OF GASTONIA, TERRY | ) |
| L. SULT, individually and in his | ) |
| capacity as Chief of Police, and | ) |
| ED TURAS, | ) |
| | ) |
| Defendants. | ) |
| | ) |

**THIS MATTER** is before the Court on the "Defendants' Motion for Judgment on the Pleadings" (document #15) and "Memorandum of Law in Support . . ." (document #16), both filed March 24, 2008. The Plaintiff filed his ". . . Response . . ." (document #17) April 10, 2008. The Defendants have not filed a reply and the time for doing so has expired.

The parties have consented to Magistrate Judge jurisdiction under 28 U.S.C. § 636(c), and this motion is now ripe for determination.

Having fully considered the arguments, the record, and the applicable authority, the undersigned will <u>grant in part</u> and <u>deny in part</u> the Defendants' Motion to Dismiss, as discussed below.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This is an action seeking damages pursuant to 42 U.S.C. § 1983, and alleging the state law claims of libel, blacklisting, and intentional infliction of emotional distress. The Plaintiff is seeking compensatory and punitive damages.

The Plaintiff, a former police officer with the Gastonia Police Department, is a citizen and resident of Gaston County, North Carolina. Defendant City of Gastonia is a municipal corporation of the State of North Carolina. Defendants Police Chief Terry L. Sult and Sergeant Ed Turas are sworn officers of the Gastonia Police Department.

Taking the facts alleged in the Complaint as true, the Plaintiff had been a member of the Rocky Mount, North Carolina Police Department for approximately four years when his fiancee accepted new employment and relocated. As a result, he sought employment with the Gastonia Police Department (the "Department"), and was hired in August 2006. When hired, he was cautioned that he was a "probationary employee" and therefore subject to "summary termination without recourse."

During the Plaintiff's training he was required to "ride with" Officer Jonus Hansen, an Officer with whom his superiors allegedly knew he would "clash." The Plaintiff cites two incidents in which he disagreed with Officer Hansen's judgment and directives. First, the Plaintiff cites an incident in which Officer Hansen instructed him to stop a car for "loud music." While the driver was restrained in the back of the patrol car and the citation was being written, he was asked for consent to search his car – which was given. When the Plaintiff "declined to seek additional charges based upon the unlawful search," as he characterizes it, he was required to attend a disciplinary meeting with Sergeant Jamin Brackett.

In the second reported incident, Officer Hansen and the Plaintiff were investigating a vehicle accident in a fast food restaurant's parking lot. The accident caused no damage to either vehicle, but when the Plaintiff declined to issue a citation to the driver who admitted fault, he alleges that Officer Hansen "became visibly angry and demanded to know why [the Plaintiff] refused to charge the driver with assault with a deadly weapon."

In spite of these two incidents, the Plaintiff alleges that during his training he received a number of positive commendations from civilians and notes that his suggestion of a monthly roundtable meeting for officers was implemented by Defendant Sult.

On April 10, 2007, approximately eight months after he was hired, the Plaintiff was suspended without pay and recommended for termination. The Plaintiff was advised that as a probationary employee he was not entitled to a hearing, although the reasons for his suspension and probable termination were provided in writing. Specifically, Defendant Sult advised the Plaintiff that it was "clear that [his] integrity is in question and that [he] demonstrated a repeated failure to follow the orders of [his] supervisors," citing four illustrative examples: (1) "ignoring and violating Defendant Turas'[] order not to pursue a speeding vehicle that was traveling at 104 miles per hour on Interstate 85 in Gastonia"; (2) "'question[ing] the legitimacy of Sergeant Turas' orders' not to seize a large sum of money found in the possession of foreign nationals during a traffic stop"; (3) "harassing Police Attorney Stephanie Webster and . . . lying to her about a deadline imposed by Defendant Turas"; and (4) "failing to report damage to his assigned police vehicle and . . . being dishonest about his lack of knowledge regarding the cause of that damage." The Plaintiff agreed to resign in lieu of termination.

The Plaintiff responds that the stated basis for his suspension includes "contentions that are materially false or otherwise misleading." For example, he states that he did not pursue the speeding car until after Defendant Turas withdrew his previous order and authorized him to stop the vehicle. Noting that he was not disciplined for any of these incidents until he was suspended, the Plaintiff contends that these reasons are pretextual. Specifically, the Plaintiff argues that the explanation of his suspension was "based upon a set of false premises, for [his] termination from the Department, in retaliation for his refusal to commit civil rights violations, his refusal to falsify reports, and his

3

attempts to serve as a professional police officer in an unprofessional environment."

The Plaintiff further alleges that Defendant Sult placed this "false information" in his "file" to stigmatize him – knowing that it would be seen by law enforcement agencies with whom the Plaintiff was seeking employment. Defendant Sult also sent a form declaring the Plaintiff ineligible for rehire by the Gastonia Police Department to the state agency charged with certification and discipline of law enforcement officers, which the Plaintiff believes was intended to prevent him from obtaining employment as a law enforcement officer in North Carolina. The Plaintiff further alleges that Defendant Sult "ordered members of the Department to deny [the Plaintiff] access to publicly available information, to shun him, and to blacklist him"; that "Defendant Sult, Defendant Turas, and/or an unknown member of the Department has published to other police agencies a false rumor that [he] was fired for taking money seized in connection with drug arrests"; and that Defendant Sult has "repeatedly challenged" him to waive his right to privacy in his employment records so Chief Sult could publish those records to prospective employers and the general public.

## II. DISCUSSION

### A. Standard of Review

Although a motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) is separate and distinct from a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "the distinction is one without a difference [because federal courts] apply[] the same standard for Rule 12(c) motions as for motions made pursuant to Rule 12(b)(6)." Burbach Broadcasting Co. of Delaware v. Elkins Radio Corp., 278 F.3d 401, 405-06 (4th Cir. 2002). Accord Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999) ("viewing the Defendants' motion as a Rule 12(c) motion does not have a practical effect upon our review, because we review the district court's dismissal de novo and in doing so apply the

standard for a Rule 12(b)(6) motion").

"A motion to dismiss under [Fed. R. Civ. P. 12(b)(6)] tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of North Carolina v. Martin, 980 F.2d 943, 952 (4th Cir.), cert. denied, 510 U.S. 828 (1993), citing 5A C. Wright & A. Miller, Fed. Practice and Procedure §1356 (1990).

"A motion to dismiss for failure to state a claim should not be granted unless it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of [the subject] claim." McNair v. Lend Lease Trucks, Inc., 95 F.3d 325, 328 (4th Cir. 1996) (en banc), citing Rogers v. Jefferson-Pilot Life Ins. Co., 883 F.2d 324, 325 (4th Cir. 1989); and Johnson v. Mueller, 415 F.2d 354, 355 (4th Cir. 1969). Accord Republican Party of NC, 980 F.2d at 952 ("A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief") (internal citation omitted).

In considering a Rule 12(b)(6) motion, the complaint must be construed in the light most favorable to the nonmoving party, assuming factual allegations to be true. See, e.g., Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993); Martin Marietta v. Int'l Tel. Satellite, 991 F.2d 94, 97 (4th Cir. 1992); and Revene v. Charles County Comm'rs, 882 F.2d 870, 872 (4th Cir. 1989).

**B. Section 1983 Claim**

The Plaintiff alleges that the "actions of Defendant Sult, acting under color of state law in his capacity as Chief of the Department, in disciplining and terminating the Plaintiff for pretextual reasons in retaliation for the Plaintiff's refusal to engage in unethical or illegal conduct, constitute

5

the deprivation of the civil rights of the Plaintiff, including at least his liberty to refrain from engaging in unethical or illegal conduct and his right to the due process of law and the equal protection of the laws." In simpler terms, the Plaintiff alleges that by placing false information in his personnel file, Defendant Sult has denied him the opportunity to serve as a law enforcement officer, and the due process of the law to clear his name of false accusations.[1]

"Although . . . a probationary employee[] has no protected 'property' interest in his employment . . ., a public employer cannot deprive a probationary employee of his 'freedom to take advantage of other employment opportunities.'" Sciolino v. City of Newport News, Va., 480 F.3d 642, 645 (4th Cir. 2007) (quoting Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 573 (1972)). Accordingly, a Fourteenth Amendment "liberty interest is implicated by public announcement of reasons for an employee's discharge." Johnson v. Morris, 903 F.2d 996, 999 (4th Cir. 1990).

As explained by the Fourth Circuit, the Plaintiff's claim arises from the combination of two distinct rights protected by the Fourteenth Amendment: "(1) the liberty to engage in any of the common occupations of life . . .; and (2) the right to due process where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him." Sciolino, 480 F.3d at 646 (internal citations and quotations omitted). To assert such a claim, a plaintiff must allege that the charges against him: (1) placed a stigma on his reputation; (2) "were made 'public' by his employer"; (3) were "made in the course of a discharge or significant demotion"; and (4) were false. Stone v. Univ. of Md. Med. Sys. Corp., 855 F.2d 167, 172 n.5 (4th Cir. 1988) (internal citations omitted).

---

[1] In response to the Defendants' argument that the Plaintiff's retaliation claim must also fail, the Plaintiff clarifies that he "is not asserting a retaliation claim as the basis for the § 1983 action; he is asserting retaliation as evidence of motive and malice, particularly with respect to the libel, blacklisting, and emotional distress claims, and in anticipation of the Defendants' immunity defenses." Thus, the Defendants' arguments as to retaliation need not be addressed.

Applying the law to the facts of this case, the Plaintiff has sufficiently alleged that the charges against him placed a stigma on his reputation. The behavior described in the memorandum explaining the Plaintiff's termination recommendation would cause a reasonable person to think the Plaintiff was not suitable for a career in law enforcement. Likewise, the Plaintiff has explicitly alleged that facts in the memorandum were false.

Turning to the third element, the Plaintiff must have alleged that the charges against him were made in the course of his termination.[2] The allegedly false charges at issue were detailed in a memorandum which the Plaintiff alleges "identif[ied] the purported reasons for [his] suspension and proposed termination." Thus, at this stage in the proceedings, the Plaintiff has sufficiently alleged that the charges in the memorandum were made in the course of his termination.

The Defendants argue that the allegation that "Defendant Sult, Defendant Turas, and/or an unknown member of the Department has published to other police agencies a false rumor that Harrell was fired for taking money seized in connection with drug arrests" was not alleged to have occurred in connection with the Plaintiff's termination. They are correct, and the Plaintiff does not argue otherwise in his Response. Accordingly, for purposes of the § 1983 claim, the charges complained of by the Plaintiff will be limited to the four incidents listed in the memorandum.

The Plaintiff has not properly alleged, however, that the subject charges were "made public" by virtue of their being placed in his personnel file. The Fourth Circuit recently clarified what a plaintiff objecting to information placed in his personnel file must allege to satisfy this element, that is, that the charges against him were made public by his employer:

---

[2]The Plaintiff agreed to resign in lieu of termination. The Court will assume for purposes of the subject Motion, and the parties have not argued otherwise, that this constituted constructive discharge.

7

> . . . an employee must allege (and ultimately prove) a likelihood that prospective employers (i.e., employers to whom he will apply) or the public at large will inspect the file.
>
> A plaintiff can meet this standard in two ways. First, the employee could allege (and ultimately prove) that his former employer has a practice of releasing personnel files to all inquiring employers. Second the employee could allege that although his former employer releases personnel files only to certain inquiring employers, that he intends to apply to at least one of these employers.

Sciolino, 480 F.3d at 650.[3] Applying this standard, the Fourth Circuit <u>affirmed</u> the District Court's dismissal of the complaint, reasoning that the plaintiff "alleged only that his file with the charges 'may be available to prospective employers,'" but <u>reversed</u> the District Court's denial of the plaintiff's motion to amend his complaint to allege that his former employer had a practice of disseminating former employees' personnel files to local and regional police departments, "specifically including, and by way of example, the police departments of the cities of Suffolk and Hampton." <u>Id.</u> at 650-51.

The Plaintiff argues that he has alleged a "likelihood" that prospective employers will inspect his personnel file through Paragraph 41 of his Complaint, which alleges:

> The accounts contained within the April 10, 2007, disciplinary memorandum to Harrell are false and misleading statements of fact regarding Harrell's conduct in his profession as a law enforcement officer, and they tend to impugn Harrell in that profession and to cause damage to his personal and professional reputation, **and have caused him damage**, including but not limited to the loss of his job and **his inability to obtain employment with another police agency**.

Amended Compl., ¶ 41 (emphasis added in Plaintiff's Response).

Although, Paragraph 41 is included in the allegations in support of "COUNT II LIBEL," given the liberal standard governing notice pleading if it otherwise sufficiently alleged the contested

---

[3] The dissent notes the split in the circuits "as to whether stigmatizing allegations can deprive a former government employee of a constitutional liberty interest <u>before</u> the allegations are disseminated to prospective employers or others." <u>Sciolino</u>, 480 F.3d at 654 (emphasis added).

8

element perhaps this deficiency could be overlooked. However, contrary to the Plaintiff's contention, the quoted language does not sufficiently allege a likelihood that a prospective employer will inspect his personnel file. Specifically, it alleges neither that the Defendants have a practice of releasing personnel files to all inquiring employers nor that they release personnel files only to certain inquiring employers, and that he intends to apply to at least one of these. See Sciolino, 480 F.3d at 650. There could be any number of reasons why he has been unable to obtain employment with another police agency; indeed, the Plaintiff has not alleged that he has actually applied with any other agency.[4] Nor has the Plaintiff alleged that if a potential employer requested his personnel file that the Defendants would release it without his consent. Accordingly, the Plaintiff's § 1983 claim as currently pled must fail on this element.

The Plaintiff has requested leave of the Court to amend his Complaint a second time if the Amended Complaint was not found "sufficient to stand as pleading a 'likelihood of dissemination' of the file." The Court will allow the Plaintiff to amend his Complaint, if there is a good faith basis for such an amendment, to allege either that the Defendants have a practice of releasing personnel files to all inquiring employers and/or that they release personnel files only to certain inquiring employers, and he intends to apply to at least one of these employers. The Plaintiff will be allowed **sixty (60) days** from the date of this Order to amend his Complaint so that he may conduct initial discovery on this issue to determine whether a good faith basis for the amendment exists.

### C. Official Capacity Claims

The Defendants argue that the claims against Defendants Sult and Turas in their official

---

[4] The Plaintiff has not argued that the form provided by Defendant Sult "to the state agency charged with certification and discipline of law enforcement officers, stating that Harrell was ineligible for rehire by the Department" constitutes "false" charges for purposes of his § 1983 claim. The Court assumes this is because the form did not actually contain the "false" charges complained of here, but must have simply stated that the Plaintiff was not eligible for rehire (as the Complaint alleges).

capacity should be dismissed because an "official capacity claim is actually nothing more than a claim against the governmental entity by whom the official is employed." The Plaintiff states first that it has stated no official capacity claim against Defendant Turas, and to the extent that any official capacity claim against Defendant Sult is redundant (since the City of Gastonia is also named as a Defendant), it does not prejudice the Defendants.

"As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. . . . It is *not* a suit against the official personally, for the real party in interest is the entity." Kentucky v. Graham, 473 U.S. 159, 166 (1985). Thus, while the Plaintiff is correct that the redundancy in naming individuals in their official capacity and the City will not prejudice the Defendants, it is an unnecessary redundancy. Accordingly, to the extent the Plaintiff's claims have been brought against either of the individual Defendants in their official capacities <u>and</u> the City, these claims are dismissed as to the individual Defendants (in their official capacities).

### D. Section 1983 Claim Against the City of Gastonia

Defendant City of Gastonia argues that the Plaintiff's § 1983 claim against it should be dismissed because the Plaintiff seeks to hold it liable solely on the basis of respondeat superior. It is well settled that a local government may not be sued under § 1983 under the theory of respondeat superior. See Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 694 (1978). Rather, "it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Id.

In the subject case, however, the Plaintiff does allege that he has been harmed due to a

government policy or custom. Specifically, he complains of the denial of a name-clearing hearing for what he alleges were false charges which led to his suspension and probable termination, and that the Defendant City routinely denies probationary employees such a hearing. Further, even if the Court were to frame the § 1983 claim in terms of the alleged false charges made by Defendant Sult, a municipality may be held liable for the decisions of its officials authorized to make and implement its policy. See, e.g., Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999) (quoting Spell v. McDaniel, 824 F.2d 1380, 1385 (4th Cir. 1987) ("[liability] may also be found in formal or informal ad hoc 'policy' choices or decisions of municipal officials authorized to make and implement municipal policy"); and Pembaur v. City of Cincinnati, 475 U.S. 469, 480 (1986) ("municipal liability may be imposed for a single decision by municipal policy makers under appropriate circumstances").

Accordingly, Defendant City of Gastonia is a proper defendant for the Plaintiff's § 1983 claim, assuming the Plaintiff has a good faith basis to amend this claim.

### E. Qualified Immunity

The Defendants also argue that the § 1983 claim against Defendants Sult and Turas in their individual capacities should be dismissed because the Plaintiff has not alleged that their actions violated any clearly established rule of constitutional law, and therefore they are protected by qualified immunity.

The Supreme Court has found that entitlement to qualified immunity must be analyzed in two steps. See Saucier v. Katz, 533 U.S. 194, 201-02 (2001). As a "threshold question," a court must ask whether, "[t]aken in the light most favorable to the party asserting the injury, . . . the facts alleged show [that] the officer's conduct violated a constitutional right." Id. at 201. As discussed above, a probationary government employee is entitled to a name-clearing hearing of allegedly false charges

11

made against him.

If the answer to the first query is "yes," as it is here, then "the next, sequential step is to ask whether the right was clearly established" at the time of the events at issue. Id. This determination must be made "in light of the specific context of the case, not as a broad general proposition." Id. Again, as discussed above, the right to a name-clearing hearing as to allegedly false charges was clearly established at the time of the events at issue here. See Stone, 855 F.2d at 172 n.5.

Thus, assuming the Plaintiff is able to file a Second Amended Complaint which sufficiently alleges the § 1983 claim based upon the failure to provide him a name-clearing hearing, he may proceed against Defendants Sult and Turas in their individual capacities.

### F. Equal Protection Claim

In addition to the due process claim discussed above, the Plaintiff has also pled equal protection as a basis for his § 1983 claim. The Plaintiff's theory is that as a probationary employee he was selectively treated based on membership in a vulnerable group (that group being probationary employees).

Equal protection claims typically involve disparate treatment of members of a vulnerable group or challenges to laws or policies which are alleged to make irrational distinctions. See McLaughlin v. State of Fla., 379 U.S. 184, 191-92 (1964) (noting that classifications based on race "must be viewed in light of the historical fact that the central purpose of the Fourteenth Amendment was to eliminate racial discrimination emanating from official sources in the States"); and Hooper v. Bernalillo County Assessor, 472 U.S. 612, 618-20 (1985) (discussing equal protection challenge where State policy allegedly made an "irrational distinction among its residents" in awarding benefits). There are several identifiable groups which are entitled to a heightened scrutiny when it is alleged that government actions have denied them the equal protection of the laws, including

groups based on race, national origin, and gender. City of Cleburne, Tex. v. Cleburne Living Center, 473 U.S. 432, 439-41 (1985). Absent membership in an identifiable group, however, "the Equal Protection Clause requires only a rational means to serve a legitimate end." Id. at 442.

The Plaintiff has cited no authority, and the Court is aware of none, which supports his claim that probationary employees constitute a vulnerable group entitled to heightened scrutiny for purposes of the Equal Protection Clause. Hiring someone as a probationary employee is a widespread and well accepted practice which allows an employer time to determine an employee's suitability for a job before granting them the benefits to which a permanent employee is entitled. An evaluation period is particularly prudent in law enforcement – a profession whose demands and challenges are matched by few others, and a profession in which hiring an unsuitable individual can literally yield life or death consequences.

In short, the policy of hiring probationary employees – including but not limited to the hiring of law enforcement officers – is a rational means to serve a legitimate end.[5] Accordingly, this claim shall be dismissed.

### G. Libel Claim

With respect to his libel claim,[6] the Plaintiff alleges that the false and misleading statements in the discharge memorandum have impugned his reputation, and have severely limited or eliminated his ability to obtain employment with another law enforcement agency. Allegedly, Defendant Turas was the source of some of these statements who passed them on to Defendant Sult who included

---

[5]This is, of course, entirely different from rights protected by the due process clause which allows even a probationary employee a name-clearing hearing where the charges against him are alleged to be false.

[6]Although the Plaintiff's Amended Complaint alleges "libel per se, libel (susceptible of two meanings), or libel per quod," he has clarified in his Response that he intends only to pursue his libel per se claim. Accordingly, to the extent the Plaintiff has pled "libel (susceptible of two meanings)" and "libel per quod," these claims will be dismissed.

13

them in the Plaintiff's personnel file.  The Plaintiff further alleges that the subject statements were published within and outside the Department, and that these "libelous actions" were motivated by actual malice.  He also alleges that one or both of the individual Defendants published false rumors to other police agencies that he was fired for taking money seized in connection with drug-related arrests.

When pleading a libel per se claim, "a plaintiff must allege that the defendant caused injury to the plaintiff by making false, defamatory statements of or concerning the plaintiff, which were published to a third person."  Boyce & Isley, PLLC v. Cooper, 153 N.C. App. 25, 29, 568 S.E.2d 893, 897 (2002) (citation omitted).  At this early stage of the proceedings, the Plaintiff has adequately alleged that he was injured by the allegedly false and defamatory statements.  The Defendants deny, however, that there has been an adequate allegation that these statements were alleged to have been published to a third person.

The North Carolina Court of Appeals has held in the context of a libel claim that placing information in a personnel file does not amount to publication of that information, even if the information is passively available for others to read.  Pressley v. Continental Can Co., 39 N.C. App. 467, 468, 250 S.E.2d 676, 677 (1979).  As discussed above, the Plaintiff has not yet adequately alleged that his personnel file was published to potential employers, nor has he alleged that it has been published to third parties generally.  Accordingly, as to allegedly false statements in his personnel file, this claim must fail – although the Plaintiff may attempt to correct this deficiency in a Second Amended Complaint if he has a good faith basis for doing so.

As to the statements between the two individual defendants, and any statements they allegedly made to other members of the Department, however, this claim will survive.  The Plaintiff has adequately alleged that these statements were published from one person to the next.  Although

there may be a "qualified privilege" protecting these intra-department communications from a libel claim, see Kinesis Advertising, Inc. v. Hill, 652 S.E.2d 284, 297 (N.C. App. 2007), the Court cannot make that determination as a matter of law at this stage of the proceedings.

Finally, the Plaintiff has alleged that the rumor that he was fired for taking drug money from the Department was published to other police agencies. Whether the evidence will support this allegation will be determined following discovery, but at a stage of the proceedings when factual allegations must be presumed to be true, this aspect of his libel claim is not subject to dismissal.

### H. Blacklisting Claim

The Plaintiff alleges that Defendant Sult attempted to prevent him from obtaining employment as a law enforcement officer by intentionally providing false and misleading information regarding his discharge in violation of N.C. Gen. Stat. § 14-355. The statute provides:

> If any person, agent, company or corporation, after having discharged any employee from his or its service, shall prevent or attempt to prevent, by word or writing of any kind, such discharged employee from obtaining employment with any other person, company or corporation, such person, agent or corporation shall be guilty of a Class 3 misdemeanor and shall be punished by a fine not exceeding five hundred dollars ($500.00); and such person, agent, company or corporation shall be liable in penal damages to such discharged person, to be recovered by civil action. This section shall not be construed as prohibiting any person or agent of any company or corporation from furnishing in writing, upon request, any other person, company or corporation to whom such discharged person or employee has applied for employment, a truthful statement of the reason for such discharge.

N.C. Gen. Stat. § 14-355. "For the statute to be violated, the statements to the prospective employer would have had to have been unsolicited." Joiner v. Revco Discount Drug Centers, Inc., 467 F. Supp. 2d 508, 518 (W.D.N.C. 2006) (citations omitted).

The Plaintiff has not alleged that any of the Defendants made unsolicited statements to his prospective employers. He argues that in alleging that Defendant Sult has "repeatedly challenged

15

[him] to waive his right of privacy of his employment records" he has alleged that unsolicited statements have been made to prospective employers. This stretches the allegation beyond what is reasonable. The Plaintiff's theory is that Defendant Sult made these statements to media outlets expecting the Plaintiff's potential employers to hear them and assume there was negative information in the Plaintiff's personnel file. This certainly goes beyond the intent of the statute, and accordingly, this claim will be dismissed.

### I. Intentional Infliction of Emotional Distress Claim

The Plaintiff alleges that he has suffered from severe emotional distress arising from humiliation and damage to his personal reputation. In North Carolina, to state a claim for intentional infliction of emotional distress a plaintiff must show: (1) extreme and outrageous conduct, (2) which is intended to cause and does cause (3) severe emotional distress of another. See Thomas v. Northern Telecom, Inc., 157 F. Supp. 2d 627, 634-35 (M.D.N.C. 2000); Dickens v. Puryear, 302 N.C. 437, 452, 276 S.E.2d 325, 335 (1981); and Simmons v. Chemol Corp., 137 N.C. Ct. App. 319, 325, 528 S.E.2d 368, 371 (2000).

North Carolina law establishes a stringent standard that permits liability to be imposed only where the conduct at issue is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Hogan v. Forsyth Country Club, 79 N.C. App. 483, 493-94, 340 S.E.2d 116, 123 (1986). Whether the conduct alleged meets this stringent standard is a question of law for the court, not a question of fact for the jury. Id. 79 N.C. App. at 490, 340 S.E.2d at 121. Accord Wagoner v. Elkin City Schools' Bd. of Educ., 113 N.C. App. 579, 586, 440 S.E.2d 119, 123; Johnson v. Bollinger, 86 N.C. App. 1, 11, 356 S.E.2d 378, 381 (1987); and Briggs v. Rosenthal, 73 N.C. App. 672, 676, 327 S.E.2d 308, 311(1985). Furthermore, "in employment actions, North Carolina courts

have been reluctant to find intentional infliction of emotional distress claims actionable." Frazier v. First Union Nat. Bank, 747 F. Supp. 1540, 1553 (W.D.N.C. 1990).

In cases where North Carolina courts have found intentional infliction of emotional distress, the conduct has been extremely egregious, far beyond the factual allegations in this case. For example, in Hogan, the single successful plaintiff alleged that in addition to using profanity and threatening her, defendant's agent made sexually suggestive remarks, coaxed her to have sex with him, subjected her to non-consensual sexual touching, threatened her with bodily injury, and ultimately threatened her with a knife. 79 N.C. App. at 490, 340 S.E.2d at 121. Nothing remotely analogous to this kind of extreme conduct occurred in this case.

Applying these legal principles to the allegations in this case, the Plaintiff has clearly failed to state a claim for intentional infliction of emotional distress.

### J. Punitive Damages

North Carolina law establishes that municipal corporations such as cities and towns enjoy common law immunity from punitive damages. See Long v. City of Charlotte, 306 N.C. 187, 208, 293 S.E.2d 101, 115 (1982). Further, "a municipality is immune from punitive damages under 42 U.S.C. § 1983." Newport v. Fact Concerts, Inc., 453 U.S. 247, 271 (1981). Indeed, the Plaintiff has stated in his Response that he only intended the prayer for punitive damages to apply to those claims asserted against the individual Defendants in their individual capacities. As such, to the extent the prayer for punitive damages could be interpreted to apply to Defendant City of Gastonia it must also be dismissed.

# III. ORDER

**NOW, THEREFORE, IT IS ORDERED:**

1. The Defendants' Motion to Dismiss (document #15) is **GRANTED IN PART** and **DENIED IN PART**, as discussed above.

Specifically, the Defendants' Motion to Dismiss is **GRANTED** as to:

    a. the § 1983 claim (which may be revived against the City of Gastonia);

    b. the blacklisting claim;

    c. the intentional infliction of emotional distress claim;

    d. the request for punitive damages against Defendant City of Gastonia; and

    e. the individual Defendants in their official capacities.

The Defendants' Motion to Dismiss is **DENIED** as to:

    a. the libel per se claim against all defendants;[7] and

    b. the punitive damages claim against the individual Defendants in their individual capacities.

2. If there is a good faith basis for doing so, the Plaintiff may file a Second Amended Complaint within **sixty (60) days** of this Order to amend his § 1983 claim based upon due process and that portion of his libel claim pertaining to the allegedly false statements in his personnel file.

3. If the Plaintiff files a Second Amended Complaint, counsel is directed to delete any claim that has been dismissed and is not subject to revival by additional allegations.

---

[7] Neither the Plaintiff's Complaint nor his Response make clear which Defendants are included in the libel claim. Although it appears that only the individual Defendants are included, the Court will assume for purposes of the subject Motion that the City is also included.

4.  The Clerk is directed to send copies of this Memorandum and Order to counsel for the parties.

**SO ORDERED.**

Signed: May 20, 2008

*Carl Horn, III*

Carl Horn, III
United States Magistrate Judge